Argued March 10, affirmed March 30, 1960

# WATSON *v.* WATSON
350 P. 2d 694

*Francis F. Yunker,* Portland, argued the cause and filed a brief for appellant.

*Robert L. Olson,* Portland, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and HOLMAN, Justices.

WARNER, J.

This is the second appeal in the divorce suit wherein Delores Barbara Watson is plaintiff and Ronald Leonard Watson is defendant. As in the first appeal (see *Watson v. Watson,* 213 Or 182, 323 P2d 335, decided April 2, 1958), this appeal is addressed solely to the provision of the decree relating to custody of Ronald Leonard Watson, Jr., the son of the parties, who was born July 17, 1954. In the first appeal, as now, the plaintiff is the appellant.

The plaintiff sued defendant for divorce in 1957 and in April of that year secured a decree in her favor. At the same time, the court, acting pursuant to ORS 107.100(1),[1] made the following order with reference to Ronald, Jr.:

"In regard to the minor child of the parties, Ronald Leonard Watson, Jr., age 22 months, it is the order of the Court that he be placed under the supervision and control of the Juvenile Court of Multnomah County, Oregon until the further orders of this Court, and both of the parties to this cause are hereby restrained from removing the child from his present location  *  *  *  and from interfering

[1] ORS 107.100(1): "Whenever a marriage is declared void or dissolved, the court has power further to decree as follows:
"(a) For the future care and custody of the minor children of the marriage, as it may deem just and proper, having due regard to the age and sex of such children, and unless otherwise manifestly improper, giving the preference to the party not at fault."

with the Juvenile Court in the supervision and control of said child."

It was this provision of the decree that inspired plaintiff's first appeal.

At the conclusion of the divorce trial the judge presiding made the following remarks apropos of the foregoing custody order:

"Now, with reference to the child, Ronnie. He has a petition now filed alleging him to be a dependent child in the Juvenile Court. From what I have heard here, I am inclined to believe that he is a pretty dependent child and that you, the parents of the child, are going to need help and guidance from somewhere, sometime, if this child is ever going to be raised correctly. If you people can't change your way of doing things, probably the child will grow up to be a pretty maladjusted kid. The Juvenile Court is the agency set up by the Court to take care of such situations and so in the Juvenile Court where I sit, that dependency petition will be entertained * * *. Now, when I do this, I am not saying that the parents are being deprived of their rights to the child. * * * but I am saying this: that the Juvenile Court is going to make a thorough going investigation of this situation with reference to Ronnie and that at that time it will be determined what future disposition should be made, both of the parents' rights, and also if the wardship, if any, should be established in the Juvenile Court."

It will be noticed therefrom that a dependency proceeding concerning Ronald, Jr., had already been initiated and was pending in April, 1957.

On November 13, 1957, and while the first appeal was pending, a hearing was held in the Juvenile Court on the dependency petition before the same judge who presided at the divorce trial. It was followed by an

order of temporary commitment of Ronald, Jr., to the Welfare Department for placement in a foster home. It was coupled with a direction to the Department to survey the homes of the father and mother with authority to place the child in such home as appeared to be satisfactory. In pursuance to that order the child was later placed in the home of the father, where he was residing at the time of the decision on the first appeal.

On April 2, 1958, the decision on the first appeal was rendered. *Watson v. Watson,* supra (213 Or 182). In that case we held that the custody provision in the decree was not final and, therefore, not appealable. At the same time, we stated that it was then apparent that sufficient time had elapsed for a final adjudication relative to the custody of the child and remanded the cause to the trial court for entry of a final decree upon that question.

Subsequent to the divorce decree in April, 1957, and prior to the last custody hearing, the plaintiff and defendant had each entered into new marriages.

Following the direction of the mandate in the first appeal, on September 30, 1958, the trial court proceeded in the divorce matter to take further testimony, looking to such a final order. At the same time, the court ordered a consolidation of the custody proceedings in the divorce matter with the proceedings on the dependency petition then pending in the Juvenile Court. In so doing, he acted pursuant to ORS 419.551 (now ORS 419.559),[2] which, so far as pertinent reads:

"* * * Such cases [juvenile cases] may, at the discretion of the court, be consolidated for trial with other pending cases not coming under ORS

---

[2] Oregon Laws 1959, ch 432 § 43 (effective January 1, 1960), codified as ORS 419.559, replaces ORS 419.551 with substantially the same authority conferred by ORS 419.551.

419.502 to 419.574 [juvenile proceedings provisions], provided such other cases directly affect the same parties and involve the same general subject matter and would normally be heard by the same judge hearing cases coming under ORS 419.502 to 419.574."

On January 19, 1959, the trial court entered its final order, reading:

"That the defendant Ronald Leonard Watson be, and hereby is, awarded the custody and control of the minor child of the parties, Ronald Leonard Watson, Jr., *subject however to the dependent wardship and continuing supervision of the Juvenile Court.*" (Emphasis supplied.)

In addition, the plaintiff was given rights of visitation with the child away from the defendant's home.

From this custodial order the plaintiff has again appealed, assigning as error the giving of the custody of the boy to his father and the consolidation of the juvenile dependency proceedings with the instant divorce case.

The record before us is copiously supplied with criminations and recriminations on the part of both parties and most of these are supported with persuasive evidence. No purpose will be served by spelling out their unpleasant details. It is enough to observe that as of the time of the divorce trial in 1957, there was a showing of a shameful lack of parental responsibility and fitness on the part of both the father and mother with a history of moral digressions that made it impossible for any judge sensible to his duty to then give the boy to either plaintiff or defendant without jeopardizing the welfare of the child.

There was an interval of approximately two years between the first and last order of custody. During

this period the father had demonstrated a reformation warranting the complimentary observations of the trial judge.

At the last hearing, much of the plaintiff's case, as well as her argument in this court, was in vilification of defendant's present wife. But in his final evaluation of the testimony in this vexatious matter, the able judge observed that the record of the defendant father and his present wife in terms of proper social adjustment was "much better than that of the plaintiff mother and her present husband," and expressed himself as being particularly impressed "with the courage and apparently newly found character of the father's present wife." The trial judge also called attention to the fact that the father had shown continuing improvement in the field of parental responsibility and remarked on the "fine progress that the child has made in the father's home in the last several months" as "undoubtedly due to the loving care he has received in that home." We cannot gainsay these significant conclusions.

When a judge of experience is confronted with the serious custodial problem revealed in this matter, we must defer and do to his judgment flowing from his opportunity to see and hear the witnesses. This court is denied that superior advantage by being confined to the consideration of the written record made below.

Moreover, every decision of a trial court in custody matters when tested by appeal, comes to us weighted with the presumption that the court below has properly exercised its judicial discretion in determining what is for the best interest of the child. *Rea v. Rea*, 195 Or 252, 279, 245 P2d 884, 35 ALR2d 612. Here, the presumption attains additional force by the evidence of the court's careful and considerate disposal of

a delicate and difficult situation and his judicious exercise of all the facilities available to him to insure the health and welfare of the child involved.

■ We find no merit in plaintiff's objection to the consolidation of cases which the court ordered pursuant to former ORS 419.551.

The order of custody is affirmed.