Argued September 8, modified and remanded November 8, 1961

IN THE MATTER OF BRUCE CUTTS, A CHILD.

# CUTTS *v.* CUTTS

366 P. 2d 179

*Robert P. Dickinson* and *Lincoln S. Ferris,* Portland, argued the cause and submitted briefs for appellant and petitioner Stanford Cutts.

*Melville H. Geil,* Deputy District Attorney, Portland, argued the cause for Multnomah County Juvenile Court and Multnomah County. With him on the brief was Charles E. Raymond, District Attorney, Portland.

No appearances for respondent Zaree King Cutts.

Before Rossman, Presiding Justice, and Perry, Sloan, O'Connell and Goodwin, Justices.

GOODWIN, J.

Stanford Cutts appeals from an order of the circuit court denying his petition to adopt a four-year-old boy and committing the child permanently to the Oregon State Public Welfare Commission.

During the spring of 1956, Stanford became acquainted with an unmarried woman who expected shortly to bear a child. Stanford was then married to a woman hereafter called Zaree. Stanford and Zaree

believed themselves to be without hope of posterity and wanted to obtain a child. They did so without either the expense or the legal safeguards of adoption. They arranged with the expectant mother to have her register as Mrs. Stanford Cutts at a hospital where neither woman was known. In due time, the mother repaired to the hospital and was delivered of a son. A few days later Stanford obtained the release of the mother and new baby and brought them both to his home. The mother then dropped out of the life of her child.

On September 2, 1958, Stanford consulted an attorney concerning a divorce. The attorney asked, "Do you have any children?"

Stanford answered, "One".

Relying upon this incomplete information, the lawyer filed a complaint which employed language common to divorce pleadings: "One child has been born, the issue of said marriage; * * *."

Zaree then filed her answer, which also alleged that the child was born as issue of the marriage. No one at the trial mentioned the child's origin, even though the custody of the child was bitterly contested.[1]

■ The court decided that, as of April 9, 1959, Stanford was more fit than Zaree to rear the child. The decree was entered accordingly. However, Stanford never had an opportunity to demonstrate his fitness. The decree had given Zaree reasonable visitation privileges. When she first exercised this privilege a few days after the trial, she removed the child to Oklahoma. Upon Zaree's return to Oregon several weeks later, she did not surrender the child to Stanford.

---

[1] The record does not suggest that either attorney knew, or had reason to know, that fraud was being perpetrated on the court.

Instead, she took the child to the juvenile department of the circuit court and for the first time disclosed the facts concerning the child's birth. The child was promptly made a ward of the juvenile court pending further investigation.⑧ Since this preliminary action by the juvenile court has not been challenged on appeal, we reserve the question whether the juvenile court exceeded its jurisdiction in making the child a temporary ward. Under the former law, the substance of which has been carried into ORS 419.476 (1), the court may, in a proper case, investigate or take emergency action to protect a child.⑨

■■ Assuming that a juvenile court has obtained jurisdiction of a child under ORS 419.476 (1), or, as it purportedly did here, under the provisions of the former juvenile code, the court may enter such orders as may be authorized by law and necessary to protect

---

⑧ This temporary order of the juvenile court was under the then applicable ORS 419.102, and 419.502 et seq. and is not challenged by this appeal. Since the only orders challenged by this appeal were made after the effective date of Oregon Laws 1959, ch 432 (January 1, 1960), the controlling code provisions are those presently found in the Oregon Revised Statutes.

⑨ "[ORS] **419.476 Children within jurisdiction of juvenile court.** (1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; or

"(b) Who is beyond the control of his parents or other person having his custody; or

"(c) Whose behavior or condition is such as to endanger his own welfare or the welfare of others; or

"(d) Whose parents or other person having his custody have abandoned him, failed to provide him with the support or education required by law, subjected him to cruelty or depravity or failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being; or

"(e) Who has run away from his home.

"(2) The provisions of subsection (1) of this section do not prevent a court of competent jurisdiction from entertaining a civil action or suit, involving a child."

the child. Moreover, by following the procedure now found in ORS 419.525, in a case where the facts warrant such drastic action the court may terminate forever the rights of any adult claiming an interest in the child.[⊗] The power of the state thus to act in the interest of the child is superior to the rights of natural parents, step-parents, adoptive parents, or strangers, although, obviously, it may be exercised only according to law. *Belmont v. Black et al,* 218 Or 514, 346 P2d 367 (1959). For a discussion of the requirements of the code, see Holman, *Oregon's New Juvenile Code,* 39 OLR 305, especially 311-312 (1960).

Assuming to act under the statutes then in force, the juvenile court on August 17, 1959, temporarily committed the child to Providence Nursery, a child-care agency, and referred the file to a juvenile counselor for further study. The court specifically directed its staff to investigate the advisability of permanent commitment to the State Public Welfare Commission under the statute then in effect, the substance of which has been carried into ORS 419.523 et seq. This order was not objected to at the time and is not specifically

---

[⊗] "[ORS] **419.523 Termination of parental rights; grounds.** (1) The parental rights of the parents of a child within the jurisdiction of the juvenile court as provided in subsection (1) of ORS 419.476 may be terminated as provided in this section and ORS 419.525. The rights of one parent may be terminated without affecting the rights of the other parent.

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds:

"(a) That the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child; or

"(b) Have abandoned the child. It is prima facie evidence of abandonment that the parent or parents, although having legal custody of the child, have surrendered physical custody of the child and for a period of 90 days following such surrender have not by some affirmative act manifested to the child or the person having physical custody of the child an intention to resume physical custody of the child."

challenged on appeal. For the purposes of this case, we will assume, without deciding, that the trial court had reason to order the investigation.

While the juvenile department was thus studying the child's case, Stanford filed in the probate department of the same court a petition to adopt the child pursuant to ORS 109.310 through 109.350. The adoptive petition made no reference to paternity, but described the child as born out of wedlock. This petition was thus in direct conflict with the divorce decree, under which Stanford was declared to be entitled to the custody of the child as the child's father. The petition was referred to the same judge who not only had under advisement the juvenile court file, but also had previously tried the divorce case. On August 24, 1959, the files included:

(1) A divorce decree dated April 9, 1959, reciting that Stanford Cutts was the father of the child and awarding him custody;

(2) A juvenile court order of wardship reciting among other things that an investigation should be had to determine the parentage of the child; and

(3) A petition by Stanford Cutts to adopt the child as a fatherless child.

On July 14, 1960, the judge entered an order consolidating the three matters mentioned above, together with a new petition which meanwhile had been filed by the juvenile court staff, seeking the permanent commitment of the child to the Public Welfare Commission under ORS 419.523 to 419.527. The order of consolidation was based upon ORS 419.559. It was served on all interested persons.

By its terms, ORS 419.559 is broad enough to permit such combinations of parties and issues for hearing

in a proper case. *Watson v. Watson,* 221 Or 138, 350 P2d 694 (construing the forerunner of ORS 419.559). However, the draftsmen of the new juvenile code, of which ORS 419.559 is a part, observed in reporting the bill to the Assembly:

> "[I]n the committee's judgment, it would be unwise to allow indiscriminate consolidation of hearings, for then the child could get lost in the procedural mill." Report, Legislative Interim Committee on Judicial Administration, Part II, p 18 (1959).

This may have been a prophetic observation.

■ When the consolidated hearing was ordered, the law regarded Stanford as a natural parent holding custody under a valid decree of divorce. The factual inaccuracy of this decree did not impair its status as a final decree, though it could have been set aside, ORS 16.460, or modified, ORS 107.130, upon a finding that fraud had been practiced on the court. See *Miller v. Miller,* 73 Adv Sh 165, 228 Or 301, 365 P2d 86. As of July 14, 1960, however, no such relief had been sought, so that there was nothing before any court in the form of a pleading or motion attacking the decree. Cf. *Watson v. Watson,* supra, where a motion to modify the custody provision of the divorce decree was directly in issue in the divorce suit before the consolidated hearing was ordered.

■■ It is not necessary in this case to decide when and under what circumstances, if any, a trial judge on his own motion may reopen and set down for hearing the custody provisions of a divorce decree. Cf. *Godfrey v. Godfrey,* 73 Adv Sh 89, 228 Or 228, 364 P2d 620. Subject to the requirements of due process of law and orderly procedure, the custody provisions of divorce decrees remain open during the minority of

the children concerned. See *Scarth v. Scarth,* 211 Or 121, 315 P2d 141; ORS 107.130. The statute provides that the court may set aside, alter, or modify such a decree at any time upon the motion of either party. No such motion was filed in this case, but the absence of a motion was never called to the court's attention. All parties were present in court with their attorneys. A timely objection would no doubt have resulted in an appropriate motion being filed. All parties were advised that the court was considering the reopening of the decree along with other matters related to the child. In the absence of a timely objection or a showing that prejudice resulted from the want of a motion to modify the decree, we do not believe that the consolidation in and of itself constituted such an abuse of discretion as to require reversal.

It remains to be seen whether the rights of the parties, including those of the child, were fully protected in the proceedings which followed the order of consolidation. The final order of the court is supported by a memorandum which reveals the basis for the action ultimately taken and now challenged by this appeal. The court found that Stanford Cutts had participated in a fraud on the divorce court and then said: "In view of the extensive recriminations found in the divorce case and the adoption proceedings, and the relatively unstable nature of Mr. Cutts' surroundings and arrangements for the child, this Court concludes that the welfare of the child would not be well served by allowing him to adopt it."

■■ The court then proceeded to settle all remaining questions at once by permanently committing the child to the State Public Welfare Commission under the provisions of ORS 419.523 to 419.527. Whether or not the court was justified in denying the petition to

adopt the child, it exceeded its statutory authority when it committed the child permanently to the Welfare Commission on the basis of the record made in this case. It will be noted that ORS 419.523 does not authorize the indiscriminate commitment of foundlings and orphans to public agencies. The statute authorizes merely the termination of the rights of parents or other persons having custody of children found within the jurisdiction of the court as provided by ORS 419.476 (1). The jurisdictional facts must exist at the time of commitment.

Returning to ORS 419.476 (1) (footnote 3, supra), we find that the court is authorized to proceed with reference to a child whose condition matches the requirements of subsections (a) through (e). While the trial court may have had jurisdiction to investigate and make temporary provision for the protection of the child at the time the child was brought to the court's attention, it does not follow that there remained a factual basis upon which the court could proceed to terminate the rights of Stanford Cutts as a person in custody of the child. The record shows that Stanford Cutts was deemed a fit and proper person to have custody of the child on April 9, 1959. Thereafter, he had no further opportunity to prove himself either fit or unfit. There is no factual basis for this court to say that any of the provisions of ORS 419.476 (1) applied to the child as of the date of the consolidated hearing.

As this court held in *Belmont v. Black et al,* 218 Or 514, supra, even a stranger who has been providing proper care to a child under the presumably valid consent of its natural parent or guardian has rights which must be recognized by the juvenile court. The powers and authority of the juvenile court in 1959

with reference to the termination of parental rights have not been radically expanded by the new code. What this court said in *Belmont v. Black et al,* supra, applies with equal force to the present statutes. The mere fact that a court might deny a petition to adopt a child does not necessarily mean that the custodian of the child is unfit to continue in that role. The record reveals no reason why the child should be taken from the only father it has ever known and placed in the possibly more sanitary hands of an institution. Undue weight was given the failure of the foster father to tell his lawyer all the facts during the divorce case. Even if it were true that Stanford Cutts wilfully worked a fraud upon the court, which has not been demonstrated, we do not believe such collateral misconduct is sufficient ground to constitute the kind of depravity required to invoke the provisions of ORS 419.523. *State v. Easley,* 73 Adv Sh 397, 228 Or 472, 365 P2d 293. It will be remembered that in *Belmont v. Black et al,* supra, this court did not believe that the collateral misconduct in that case (failure to pay child-support for other children) constituted sufficient ground to make a child even a temporary ward of the court, much less a permanent ward. In *Belmont v. Black,* the foster father was likewise not a blood relative of the child, but had been married for one year to its mother. In the case at bar, the foster father had never been married to the mother of the child, but had a valid written consent from her to adopt the child, which consent further was ratified by her at the consolidated hearing.

 Insofar as the rights of Stanford Cutts are concerned, we believe that the construction this court has placed upon the language now found in ORS 419.476 (1) (parents or other persons having cus-

tody) requires clear and cogent proof of unfitness against Stanford Cutts before permanent commitment would be justified. *Belmont v. Black et al,* supra. The authorities were fully considered in that case and this opinion need not be extended by a review thereof.

For the reasons indicated, the order of commitment to the State Public Welfare Commission must be vacated and the child must be returned to Stanford Cutts. There is likewise no factual foundation for the temporary wardship, which was commenced in August of 1959. It should be dissolved. If conditions should make it necessary in the future, temporary wardship is available under the appropriate statutes.

■ When the petition to adopt the child was filed in the circuit court, it was factually in conflict with the then valid and subsisting decree of the divorce court. It was premature and should have been dismissed. Since the court did, however, deny the petition on the merits, that portion of the order should be set aside with instructions to dismiss the petition without prejudice. In the future, some qualified person may file a petition which can be heard solely upon its own merit. In considering the present petition, the trial court relied in major part upon the "recriminations of the divorce case". If the same petitioner should refile, we believe that whatever character evidence Zaree Cutts may have to offer concerning the petitioner should be received with caution and in a hearing limited to one question at a time. It might be in the best interest of the child to permit the child to remain in the home of Stanford Cutts for a reasonable time before any petition is heard so that an investigation of the fitness of the home may be based upon experience in that home and not upon hypothetical considerations which appear to have pre-

occupied the welfare authorities during their first investigation.

The portions of the order not appealed from had to do with the rights of Zaree Cutts and the natural mother of the child. There is no reason to disturb the order in those particulars.

Modified and remanded without costs to any party.