Argued October 7, divorce decree affirmed as modified and re-
manded with directions, juvenile proceeding remanded
with order to dismiss October 26, 1966

# CHRISTY *v.* CHRISTY
## IN THE MATTER OF TERRY CHRISTY AND
## TROY CHRISTY, CHILDREN
# CHRISTY *v.* CHRISTY
### 419 P. 2d 425

*Francis F. Yunker,* Portland, argued the cause and filed the brief for appellant.

*John Paul Jones* and *Benhardt E. Schmidt,* Portland, argued the cause and filed the brief for respondent.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman and Lusk, Justices.

HOLMAN, J.

Plaintiff wife filed a suit for divorce which she subsequently amended to a proceeding for separation from bed and board. Defendant husband filed a cross complaint for a divorce. The trial court granted the husband a divorce and a 1953 Plymouth automobile. The wife was awarded household furniture of unknown value, the equity in a residence, a 1957 Thunderbird automobile, $1,500 attorney's fees and actual costs in the sum of $253.62, as well as a judgment for $500 unpaid support money for the children and herself, which unpaid support was accumulated during the pendency of the proceedings.

The trial court refused to make any provision for the custody of the two minor children of the parties, a boy of four and a girl of six, stating that neither parent appeared to be competent to have custody of the children. The decree contained the following provision:

> "That the care, custody and control of Taraine R. Christy and Troy C. Christy, minor children of plaintiff and defendant, shall be subject to the findings and hearings as shall be determined by a Petition filed in the Juvenile Court of Multnomah County, under the provisions of ORS 419.482."

Five days earlier in a memorandum opinion the trial court had directed that a petition be filed under the provisions of ORS 419.482.[1] In the juvenile proceedings the children were adjudicated to be dependent wards of the court, and physical custody was awarded to the husband.

---

[1] ORS 419.482 provides, among other things, that the judge of the juvenile court may direct the filing of a juvenile petition when the interests of the child appear to so require. The trial judge, though not acting in that capacity in trying the divorce case, is also a judge of the juvenile court.

The divorce and juvenile cases were consolidated for the purpose of this appeal. The husband appealed from the court's decree in both cases. He objected to the wife being given virtually all of the property in the divorce proceeding and to the children being made wards of the court in the juvenile proceeding.

■ There is no authority permitting the divorce court to delegate the determination of custody to another court. The obligation rests upon the divorce court to award custody, *Watson v. Watson,* 213 Or 182, 184, 323 P2d 335 (1958). The divorce court may temporarily place a child under the supervision and control of the juvenile authorities pending a determination of permanent custody by the divorce court, *Watson v. Watson,* supra, but it may not delegate its duty to make the ultimate determination. If the trial court in the divorce case found neither parent competent to have unsupervised custody, the court had authority to award custody to either parent or to a neutral home under such supervisory control as the court might direct. *Watson v. Watson,* 221 Or 138, 350 P2d 694. The divorce court also had authority to avail itself of the investigative procedures of the juvenile court, but the information secured must meet the standards of admissibility required in a court of equity. It should not be hearsay in the absence of a stipulation of the parties to the contrary.

The transcript in the divorce proceedings covers 750 pages of testimony. Much of it is sordid and conflicting. Nothing will be added to the jurisprudence of this state by a minute discussion of it. The evidence indicates that the wife is amoral. She admitted repetitive adulterous conduct. It also discloses that the husband is rigid and uncooperative and has difficulty perceiving anything but his own interests.

At the commencement of the divorce proceeding the parties were operating a slenderizing and charm studio. Both participated in the operation. Because of conflict between them the court directed the husband to operate the business and the wife to stay home and take care of the children. The wife was awarded support money for herself and the children in the sum of $500 per month and was given occupancy of the family home. From this she was required to make monthly mortgage payments on the home of approximately $130 per month. After a short period of operation the husband walked off and left the business and turned himself into Barnes Hospital because of emotional difficulties. The wife then took over the business by court authorization and operated it for a short period of time until it became defunct. The husband made one support payment of $500 per month and a second such payment remained to be paid when the court modified the order because of the husband's unemployment and required him to pay $30 per month per child thereafter. The husband subsequently went to work and though his earnings were considerable, at times in excess of $2,000 per month, made no offer or effort to purge himself of his contempt for non-compliance with the court's order for temporary support and attorney's fees. Neither did he make any offer to increase the grossly inadequate support payments for the benefit of his children, nor did he make any payment on the mortgage. The wife through her own employment furnished the principal support for the children, for whom she had to hire baby sitters during working hours. She also struggled with the payments on the mortgage and never became more than one month delinquent. At the same time she was having her salary attached by creditors of the parties'

business. The husband finally admitted that during the pendency of the case he had secreted a thousand dollars with his mother for the purpose of appealing this case at a time before he knew what the outcome would be. When the wife's employment required her to move to Eugene, the husband prevented her from renting the home in Portland by calling the prospective renters and informing them that the place was in litigation and that he did not want anyone living in it.

Virtually the only asset of any value was the equity in the home on which there was an unpaid balance of approximately $13,000. The purchase price of the house was $21,000. This would make a paper equity of approximately $8,000, but there was no evidence as to the actual value of the home. The husband's principal objection to the divorce decree was the court's award of this equity to his wife.

■ It is apparent that there would be no equity over which to quarrel had the wife not kept the payments current. Presumably she is still keeping them current and this litigation was commenced in September of 1963. The husband's earning capacity is shown to be far in excess of that of his wife's, and even though the equity in the home was the result of their joint efforts in the operation of the business, we do not believe it inappropriate that the wife be given the entire equity for the purpose of aiding her in adjusting to earning her own livelihod. The court's award of the equity in the home to the wife is affirmed.

■ This case is tried *de novo* in this court, and as a consequence we must make an award of the children's custody as there is no such award in the decree. The trial court by means we have heretofore adjudicated to be improper gave the children to the husband. The

parties were given full opportunity to present evidence in the divorce case relative to custody and were not aware until after all the testimony was in that the trial court would attempt to delegate the awarding of custody to a juvenile proceeding. There is, therefore, adequate evidence to form the basis for an award of custody. It is an unenviable and difficult choice. The stated conclusions concerning the personalities and propensities of the parties disclose obvious imperfections in both parents as proper persons to rear the children. As between the two, we choose the husband. We do not believe, however, that the husband's custody should presently be unsupervised. There are obvious benefits to be derived by the children from the many members of the husband's closely-knit family who reside in the Portland area. The wife is alone and has no close relatives residing in this area.

■ The custody of the children is accordingly awarded to the father under the supervision of the Multnomah County Juvenile Department. The plaintiff shall have visitation with the children of the parties on the second weekend of each month from Friday night at 6 P.M. to Sunday night at 7 P.M., for one full week during the Christmas holidays from December 27 through January 3 of the following year, and for the month of July of each year. During the periods of visitation all expenses incident thereto will be borne by plaintiff.

■ The divorce decree is affirmed in all other respects except the attorney's fees for the wife are reduced to $1,000. This was all she requested. She may not receive more than she requests. *McDonald v. McDonald,* 234 Or 551, 553, 383 P2d 96 (1963). The juvenile proceeding is remanded with directions to dis-

miss. Costs are awarded to neither party upon this appeal. Both proceedings are remanded to the trial court for the purpose of entering decrees in conformance with this opinion.