Argued October 29, 1971, reversed and remanded January 14, 1972

In the Matter of Tarraine Reni Christy and
Troy Garrett Christy, Children

STATE EX REL JUVENILE DEPARTMENT OF
CLACKAMAS COUNTY et al, *Respondents*, v.
CHRISTY (7185), *Appellant.*

492 P2d 476

*Francis F. Yunker,* Portland, argued the cause and filed the brief for appellant.

*J. Ross Cravens,* Deputy District Attorney, Oregon City, argued the cause for respondent. With him on the brief was Roger Rook, District Attorney for Clackamas County, Oregon City.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

This is an appeal by the father from an order

of the Clackamas County Juvenile Court which declared Tarraine Reni Christy, age 11, and Troy Garrett Christy, age 9, wards of the juvenile court and further ordered "* * * that the physical care and custody * * * be vested in their mother * * * with supervision of said children to be provided by the Clackamas County Juvenile Department."

Several years prior to the juvenile court proceedings the parents had obtained a divorce in Multnomah County and custody of the children was awarded to the father. *Christy v. Christy,* 244 Or 575, 419 P2d 425 (1966). In recent years the children had been living with their father in Clackamas County, Oregon. The mother had remarried and was living in Lane County, Oregon.

During the interval since the divorce decree the mother has filed two motions to change the custody provisions. Both motions have been denied.

The events which led to the juvenile court proceedings occurred on September 1, 1970. On that date the girl asked the housekeeper to take her and her brother to Lake Oswego, Clackamas County, so that the children could go shopping. The girl's real purpose was to create an opportunity to run away. The girl told the housekeeper that she and her brother wanted to do some shopping by themselves and that they would meet the housekeeper at a pre-arranged place about two hours later. The girl had spoken with her mother by telephone the night before about running away. The mother was later to testify that she tried to discourage her daughter, but the girl went ahead with her plan. After the housekeeper left the children, the boy became frightened and began to cry. The girl then telephoned her mother in Lane County and the mother told the

girl to take her brother to the nearby police station and wait there. The mother called the police station to say that she was on her way to Lake Oswego. She picked up the children and took them back to Lane County with her. The children remained there with the mother and stepfather.

On September 14, 1970, the circuit court of Multnomah County issued a show cause order directing the mother to appear and show cause why she should not be held in contempt of the court for having violated the custody provisions of the divorce decree. The sheriff of Lane County was unable to serve this order on the mother.

Thereafter, the father obtained a writ of assistance. Two members of the sheriff's office of Lane County picked up the children from the mother's home and delivered them to the father at the police station in Lane County. The father and children returned to Clackamas County.

The mother filed a petition in the juvenile department of the circuit court of Clackamas County which asked that court to take jurisdiction of the children and declare them wards of the court on the grounds that:

"* * * [T]he person having legal custody of said children * * * has failed to provide them with the care, guidance and protection necessary for their physical, mental and emotional well being by reason of the following facts: they ran away from the father's home on September 1, 1970, and they continually threaten to run from his custody; further, the father's housekeeper fails to provide adequate supervision of them, allowing them on the Lake Oswego streets for periods ranging to at least five hours; and further, the children are emotion-

ally distressed when confronted with living with their father, including vomiting and hysteria."

On October 30, 1970, the juvenile court held a preliminary hearing on the petition. At that time the father objected to the jurisdiction of the juvenile court on the grounds that the children already were wards of the Circuit Court of Multnomah County by virtue of the divorce decree. The court denied this motion and proceeded to hear testimony. The witnesses at this hearing were the records supervisor and police officer who were on duty at the Lake Oswego Police Station on September 1, 1970, the two Lane County officers who executed the writ of assistance, a marriage and family counselor whom the mother consulted prior to filing the petition, and the girl, Tarraine.

The Lane County officers testified that the girl cried severely when they went to return her to her father and that she stated she did not want to go back to her father's house. The boy did not cry but he vomited at the police station. There was testimony that the mother was acting in a very emotional manner as well.

The children had not appeared emotionally upset when the other witnesses saw them. The girl testified that she and her brother preferred to live with the mother.

The juvenile court directed that an amended petition be filed and took jurisdiction of the case at this point stating, "* * * All I am saying is there is a problem with this girl and I think that's sufficient under the code to give the Court jurisdiction."

The hearing was continued so that a psychologist, appointed by the court pursuant to a stipulation

of the parties, could interview the children, their parents and the stepfather and make a recommendation as to future custody. The father was given temporary custody of the boy and the girl was placed in foster care. A subsequent custody order transferred custody of both children to the mother.

On January 11, 1971, a hearing was held on the amended petition which read as follows:

> "* * * [T]he behavior, conditions and circumstances of said children are such as to endanger their own welfare by reason of the following facts: the children left the home of their father, who had their custody, on September 1, 1970, and that thereafter when they were returned to the home of their father, they threatened to run away again."

The father moved to dismiss the proceedings for lack of jurisdiction. The court again denied the motion to dismiss.

The father, the mother and the girl testified at this second hearing. The testimony of the girl was similar to her testimony at the first hearing. The testimony of the parents, as is to be expected, was conflicting. The mother said the children did well at her home and the father testified that the children became troubled only after visits with their mother. The psychologist's report recommended that custody be given to the mother but was largely conclusory and based on what the children said they wanted. The father called four witnesses who knew the children and all testified favorably as to the care the children had been receiving with him.

The preliminary issue on this appeal is whether the custody order of the divorce court precluded jurisdiction of the juvenile court.

■ When a court grants a divorce, it has a non-delegable duty to award custody. *Christy v. Christy,* supra at 578. The divorce court retains jurisdiction to set aside, alter or modify the custody provisions. ORS 107.130. Appellant relies on the case of *Quinn v. Hanks,* 192 Or 254, 267, 233 P2d 767 (1951), for the proposition that a juvenile court cannot proceed if the children have been the subject of a prior divorce decree. *Quinn* turned on the fact that, when that case was decided, juvenile courts and divorce courts were courts of concurrent jurisdiction. The Supreme Court applied the principle that where there are two courts of concurrent jurisdiction, the court which first entertains the suit takes precedence over the others. *Quinn v. Hanks,* supra, at 266.

■ *Quinn v. Hanks,* supra, was decided before the current juvenile code was passed in 1959 (Oregon Laws 1959, ch 432). The jurisdiction of the divorce court and the juvenile court are no longer concurrent because ORS 419.476 grants the juvenile court "exclusive original jurisdiction" of dependent and delinquent children. The 1959 juvenile code eliminated the distinction between dependent and delinquent children so far as jurisdiction is concerned.[1] Just as there is no

---

[1] "The old code classified children subject to juvenile-court jurisdiction as either 'dependent' or 'delinquent.' 'Dependent' children were those in need of the help of governmental authority; 'delinquent' children generally meant those who had transgressed against the law or who were beyond parental control. In actual practice, there was no clear line of demarcation between the two. Many were both. Some who were brought in as delinquents were found to be in fact dependent, and vice versa. Under the old procedure, if a child alleged to be dependent was found to be delinquent, a new proceeding had to be commenced, and of course, the converse was true. The new code abolishes the distinction and the attendant pro-

basis for distinguishing dependent and delinquent children, there is no reason to place dependent children who are the subjects of a custody decree in a separate category from dependent children who are not the subjects of a custody decree.

Another indication that the divorce court and the juvenile court are intended to operate independently of each other is the provision that a prior adjudication that a child is within the jurisdiction of a juvenile court will not prevent a court of competent jurisdiction from entertaining a civil action or suit involving the child. ORS 419.476(3).

■ Here we are dealing with a child who came within the jurisdiction of the divorce court first. Based upon the foregoing reasoning, we hold that this fact will not prevent the juvenile court from assuming jurisdiction when the proper circumstances are present. In the following cases the juvenile court entertained proceedings subsequent to a divorce decree: *Medina v. Medina*, 243 Or 629, 415 P2d 169 (1969); *State v. Hoppe*, 237 Or 179, 390 P2d 937 (1964). The parties in these cases did not base their objections to jurisdiction on the prior divorce decree but in *State v. Hoppe*, supra, where the divorce court had awarded custody of a 10-year-old girl to her mother, a subsequent proceeding involving the custody of the child was considered to be properly within the jurisdiction of the juvenile court.

---

cedural confusion. While the grounds for bringing the child within the power of the court must be stated in the petition, he is termed neither dependent nor delinquent. As a result, the court can, upon the filing of a petition, make a disposition without regard to a technical distinction between 'dependency' or 'delinquency.'" Holman, *Oregon's New Juvenile Code*, 39 Or L Rev 305, 306 (1960).

■ A juvenile court proceeding is not just another custody proceeding. Both the divorce court and the juvenile court are concerned on a primary basis with the welfare of the child, but, while their functions overlap, the basis of their jurisdiction and the scope of their powers differ. The divorce court is concerned with the legal custody of the children as between the parents. The juvenile court can intervene between the parent and the child only if the child's condition requires the state to use its power to protect the welfare of the child. The circumstances of the child must come within the statute. *Medina v. Medina,* supra, 243 Or at 631.

Our holding that a prior divorce decree will not prevent a juvenile court assuming jurisdiction is in accord with the law of other jurisdictions. Annotation, 78 ALR 317 (1932); *see* Annotation, 146 ALR 1172 (1943). Because of our holding, there will undoubtedly be cases in which a spouse who has been disappointed in the result of a custody fight will try to relitigate his case in the juvenile court. *Quinn v. Hanks,* supra, 192 Or at 259; *Lipschitz v. Smith,* 459 SW2d 17 (Mo 1970). For a case similar on its facts, *see State ex rel Rickli v. County Court,* 21 Wis2d 89, 123 NW2d 908 (1963). Such efforts will be fruitless if the child's condition does not meet the statutory prerequisites for jurisdiction.

■ In the present case jurisdiction was not established in the juvenile court because there was no evidence that the children had emotional problems other than those which one would expect from their living in a constant tug of war between competing parents. While these children might well benefit by being removed entirely from this emotionally charged atmo-

sphere, that matter is for the domestic relations court. Their condition at the time involved here does not bring them within the jurisdiction of the juvenile court.

Reversed and remanded with directions to dismiss the proceedings.