Argued January 30, reversed and remanded with
instructions February 26, 1973

IN THE MATTER OF PHYLLIS ANN CELAYA AND
DANIELLE CORA CELAYA, MINOR CHILDREN

STATE EX REL JUVENILE DEPARTMENT OF
LANE COUNTY, *Respondent, v.* GUIER
(No. 10,282), *Appellant.*

506 P2d 724

*Theodore Kulongoski,* Eugene, argued the cause
for appellant. On the brief was Roy Dwyer, Eugene.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

The sole question presented is whether the juvenile court erred in finding jurisdiction of two of the three minor children of respondent Phyllis Guier and declaring them wards of the court. ORS 419.476(1)(e).

The essential facts involved are as follows: Mrs. Guier is the mother of three minor children, Phyllis Celaya, aged 8, Danielle Celaya, aged 5, and Jessie Bea Dimick, aged 2. At the time these proceedings were initiated respondent and her husband, stepfather of the children, were both employed. All reside in Springfield. The natural father of the two children who were made wards of the court resides in California.

When the Guiers' regular babysitter moved out of town, two friends of the couple, the Rev. Mr. and Mrs. Isaac Reed, also of Springfield, volunteered to babysit the three children in the Reed home while the Guiers were at work, and until Mrs. Guier could arrange for a permanent babysitter. Mrs. Guier had known the Reeds for more than two years and had lived in their home with her children for a portion of that time. All attended the same church.

On May 3, 1972, about 5:30 p.m., the second day that the three minor children were in the temporary custody of the Reeds, the two older children, Phyllis and Danielle, ran away and across Main Street, a busy

thoroughfare, were called back, and after their return were spanked with a belt by Mrs. Reed. When they reached the house Mr. Reed continued the spanking with a stick.

When Mrs. Guier returned home from work about midnight to take the children home, the Reeds informed her of the spanking and reason for it. The children were wearing long pajamas and the mother observed marks on the legs only.

The next morning the girls dressed themselves. They expressed no discomforts. After breakfast the oldest girl went to school. After being in school for a short time she complained to the teacher that she could not sit at her desk for the reason "[m]y bottom hurts because I got a spanking." The teacher took her to the school nurse for examination. Severe bruise marks were found on her buttocks and lower extremities. The school authorities called a detective at the Springfield Police Department, who in turn called a caseworker for the Lane County Children's Services Division. The child was taken into custody① by the caseworker and then to a local physician for examination. Pictures showing the bruise marks were taken at a local hospital. The child was then placed in temporary shelter care.

The middle girl, Danielle Celaya, and the baby, Jessie Bea Dimick, were taken into custody about 1:30 p.m. at the Guier residence, when the children's step-father explained that he would be unable to find a babysitter before he left for work in about two hours. These children also were then taken to a shelter home.② The baby had not been punished.

---

① No contention was made either in the trial court or here that the order of temporary custody pending investigation and

The detective interviewed the Reeds at about 3:30 p.m. Mr. and Mrs. Guier were also present.

At the hearing before the juvenile court judge Mrs. Guier testified that she had previously found the Reeds reliable and not "unreasonable" in their punishment of the children; that she was not aware until later of the severity of the bruises and marks on the two children as a result of the spankings; and that the bruises she did see when she took the children home that night were "nothing to worry her about."

The detective testified that he reached the school about 11:10 a.m. When asked if he called Mrs. Guier, he stated that he did not, and did not make any contact with her until when he saw her in the afternoon at the Reeds' residence.

Following the hearing the juvenile court ruled that it did have jurisdiction under ORS 419.476(1)(e) and continued the matter for investigation.

In the meantime the court had already authorized the baby to be returned to the custody of the Guiers, but continued the shelter care for the two older girls. Thereafter the court ordered that the two older children be placed in the home of Mrs. Guier's parents at Yoncalla. Finally on August 4, 1972, the court ordered that the same two children be made wards of the court and remain at the home of Mrs. Guier's parents in Yoncalla until further order of the court.

ORS 419.476(1)(e) provides:

"(1) The juvenile court has exclusive original

---

placing the children in temporary shelter was unauthorized. In this connection we point out that ORS 419.573(1) provides:

"Except as provided in ORS 419.579, the jurisdiction of the juvenile court of the county in which a child is taken into temporary custody shall attach from the time the child is taken into custody."

jurisdiction in any case involving a person who is under 18 years of age and:

"\* \* \* \* \*

"(e) Either his parents or any other person having his custody have abandoned him, failed to provide him with the support or education required by law, subjected him to cruelty or depravity or to unexplained physical injury or failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being \* \* \*.

"\* \* \* \* \*"

After reading the entire record it is our conclusion that Mrs. Guier's act in selecting Rev. and Mrs. Reed as babysitters, and their action in administering excessive punishment, under all the circumstances shown here, would not constitute legal grounds under ORS 419.476 to authorize the court to assume jurisdiction and make the children wards of the juvenile court. *See, State ex rel Juv. Dept. v. Christy,* 7 Or App 608, 492 P2d 476 (1972). The action of the Reeds in administering unduly severe physical punishment was not sufficiently attributable to Mrs. Guier to authorize or justify depriving her of the custody of her children. *Cf. State v. Hoppe,* 237 Or 179, 390 P2d 937 (1964).

The evidence was that Mrs. Guier had known the Rev. and Mrs. Reed for about two years. She and the children had resided with the Reeds in their home before her marriage to Leland Guier. Mr. Guier had also lived at the Reed home during a portion of that period. Respondent's past experience with the Reeds' discipline of her children was that Rev. Reed had "sat them down in chairs or something like that"; that he had never spanked them severely enough to leave marks or bruises. Based upon her previous close

relationship with the Reeds and her past experience with their discipline, Mrs. Guier was reasonably entitled to expect that good care would be provided. We can find nothing in the evidence to indicate that she should or could have foreseen the severity of the punishment which the Reeds apparently inflicted on the two older children. The evidence was that Mrs. Guier did not know of the excessiveness of the punishment until after the children were taken into custody. There was no evidence introduced that had she known she would have returned them to the Reeds for further babysitting. She testified that she resigned her employment immediately after the incident involved; that she is presently staying home and caring for the baby and intends to continue doing so.

While we can visualize circumstances under which a parent can and should be deprived of custody on account of acts or omissions of a temporary custodian such as a housekeeper or babysitter, insufficient circumstances were shown to exist here. In the absence of such showing the order below must be set aside.

The order of August 4, 1972, making Phyllis and Danielle Celaya wards of the court and placing them in the custody of Mr. and Mrs. J. B. Henderson at Yoncalla, Oregon, is hereby reversed and set aside, and the court directed to enter an order returning said children to the custody of respondent.

Reversed and remanded with instructions.